BARRY J. PORTMAN
Federal Public Defender
LOREN D. STEWART
Assistant Federal Public Defender
19th Floor Federal Building – Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant BERG

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>TRAS GUSTAV KARLSSON BERG,<br><br>        Defendant. | No. CR-11-0223 MMC<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>Court: Hon. Maxine M. Chesney<br>Date:  July 6, 2011<br>Time:  2:30 PM |

  Mr. Berg is on for sentencing for a violation of 18 U.S.C. § 115(a)(1)(B), threatening a United States Senator. The question for this sentencing hearing is whether Mr. Berg should get the benefit of the bargain that is in his plea agreement with the government, or whether the Court should impose a significantly greater sanction as recommended by the Probation Department. The answer, for the reasons set forth below, is that Mr. Berg should be sentenced in accordance with his plea agreement. He accordingly asks that the Court sentence him to a term of incarceration of <u>four months</u>, with three years of supervised release to follow. The Court should not impose those conditions of supervision suggested by the probation officer that are not warranted by the instant offense. Because Mr. Berg will have served his four-month sentence as of July 7, 2011, he asks that the Court order his release as of that date.

I.     BACKGROUND

    a.     Mr. Berg and his Life

Tras Berg was born on the Upper Peninsula of Michigan in 1975. PSR ¶ 33. When he was very young, his father developed terminal cancer; Mr. Berg's father died at the age of 37, when Mr. Berg was only four years old. *Id.* Mr. Berg remembers his father well and says that his father had a strong influence on his life in a very short time. *Id.*

Mr. Berg's mother, Laurie Lalish, married Jeffrey Lalish, Mr. Berg's stepfather, when Mr. Berg was only five. PSR ¶ 34. Mr. Berg spent his childhood living in rural areas in Michigan and then New Hampshire, where he developed a deep love for the outdoors, nature, and the environment. *See* Declaration of Loren D. Stewart in Support of Defendant's Sentencing Memorandum ("Stewart Decl") ¶ 4 & Ex. D (letter from Jeffrey Lalish to Judge Chesney). He was a Boy Scout, achieving the rank of Eagle Scout. *Id.* His Eagle Scout project involved clearing an overgrown hiking trail on Saddleback Mountain in New Hampshire. *Id.* Mr. Berg's childhood love for the outdoors has turned into environmental activism in his adult life. *See* PSR ¶ 35. As Mr. Berg himself states, "I have always had reverence for life and I practice nonviolence and respect for living beings." *See* Stewart Decl. ¶ 2 & Ex. A (letter from Tras Berg to Judge Chesney); *id.* ¶ 4 & Ex. D (letter from Mr. Berg's mother to Judge Chesney, stating "I have never known Tras to cause anyone physical harm and I do not think this is in his nature.").

Mr. Berg has a college degree and a lengthy employment history. PSR ¶¶ 47-58. He likely needs counseling—and indeed, he embraces it. PSR ¶ 42 (noting that his is "willing to attend treatment"). Mr. Berg wants to caution the Court, however, against an assumption that he has been diagnosed with a mental health condition. He has not. The probation officer learned from Mr. Berg's mother that some mental health problems run in the family, *see* PSR ¶ 44, and then concluded without support that Mr. Berg *actually has* an "undiagnosed mental health condition," *see* PSR Sentencing Recommendation at 2. He has not been examined, he has not been diagnosed. It is appropriate for Mr. Berg to be examined, but he should not be sentenced

1  with conditions that assume something that is not yet established.  *See infra* (Discussion

2  Regarding Suggested Conditions of Supervised Release).

3       **b.**     **The Instant Offense**

4       Mr. Berg, like many political or environmental activists, receives "action alerts" from

5  various advocacy organizations regarding political issues.  These types of alerts are often sent via

6  electronic mail, and ask the individual to contact their decision maker regarding the issue.  In this

7  case, Mr. Berg received an "action alert" email from Defenders of Wildlife on February 24, 2011.

8  *See* Stewart Decl. ¶ 3 & Ex. B (printout of action alert from Mr. Berg's email regarding wolves).

9  Mr. Berg made a grave mistake: he responded to the action alert, providing his name, phone

10 number, address, and email address, and he added text to the form letter that included a threat to

11 his "decision maker."  *See* Stewart Decl. ¶ 4 & Ex. C (message screen that Mr. Berg

12 "personalized").  As the probation officer correctly states, his action that caused the threatening

13 messages to be delivered involved "one selection of the send button."  PSR ¶ 9.  Indeed, a close

14 examination of the documents Mr. Berg saw before he personalized the message suggest that

15 only one person would be contacted.  *See* Stewart Decl. ¶ 3 & Ex. B (solicitation urging Mr. Berg

16 to contact his "Senator," repeatedly referencing a singular (not plural) Senator); *id.* ¶ 4 & Ex. C

17 (page with text submission stating, "Dear [Decision Maker]," which is also in the singular).

18      In any event, Mr. Berg himself describes his personalization of the language and failure to

19 think before he clicked send "careless and unwise."  *Id.* ¶ 2 & Ex. A.  "I never intended for the

20 statement I made to be taken seriously, and am far from the kind of person who could carry it out.

21 Nevertheless, I understand that my statement was taken seriously and caused people to be

22 concerned or even afraid; for that I am deeply regretful."  *Id.*

23      This is not a case in which violent action was contemplated.  The FBI appropriately took

24 this matter seriously and, in the course of its investigation, searched Mr. Berg's residence, his

25 former residence, and his storage unit.  There were no weapons or indicia of violent action (such

26 as catalogs for purchase of weapons, training materials and the like).  Mr. Berg is an activist who

DEF'S SENTENCING MEMO,
CR-11-0223 MMC                             3

1  let his words get away from him. As he states in his letter to the Court, "What has resulted is
2  certainly far from my intended outcome and it is a very clear lesson to me around choosing
3  appropriate words to convey my concern." *Id.*
4      Mr. Berg regrets that this happened. "I have lots of potential and I am ashamed that I
5  have gotten myself into this predicament that has affected so many of the people that I care about.
6  I am sorry for what I did and wish I could take it back." Stewart Decl. ¶ 2 & Ex. A. It was based
7  on that attitude, and all of the facts and circumstances of this case, that the parties entered in the
8  plea agreement under rule 11(c)(1)© that calls for a four-month sentence. Mr. Berg deserves a
9  chance to get his life back on track.

10  **II.  THE SENTENCING GUIDELINES**

11      The parties agree that the sentencing guidelines apply as follows:

12      Base Offense Level (§ 2A6.1(a)):         12
13      Specific Offense Characteristic (§ 2A6.1(b)(6)):  - 4
14      Acceptance of Responsibility (§ 3E1.1):    <u>- 2</u>
15      **Adjusted Offense Level:                  6**

16  The plea agreement under rule 11(c)(1)© contains the same calculation, which was the result of
17  extensive bargaining between undersigned counsel and AUSA Gregg Lowder.
18      The probation officer disagrees with the guideline calculation, and believes that the
19  adjusted offense level should be twice as high, at level 12. *See* PSR ¶ 24. The probation officer
20  bases that calculation on an imposition of a six-level chapter three enhancement (3A1.2). Mr.
21  Berg objects to the enhancement and asks that the Court sentence him in accordance with the
22  plea agreement. For the reasons set forth in the subsequent section, Mr. Berg submits that the
23  guideline calculation advanced by the probation officer is out of step with the goals of sentencing
24  under 18 U.S.C. § 3553(a). This is a case where the appropriate sentence, taking into
25  consideration all of the goals of sentencing, is contained in the plea agreement.
26      The probation officer correctly calculates Mr. Berg's criminal history category to be III.

Under the plea agreement, the resultant guideline range is 2-8 months imprisonment.

## III.   THE APPROPRIATE SENTENCE UNDER 18 U.S.C. § 3553(A)

This Court must not only consider the guideline range.  The Court must also consider the other directives set forth in title 18 U.S.C. section 3553(a). *See United States v. Booker*, 543 U.S. 220 (2005).  "The overarching statutory charge for a district court is to impose a sentence sufficient, *but not greater than necessary*" to achieve the goals of section 3553(a).  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (internal quotations omitted).   Those goals include the need:

- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
- to afford adequate deterrence to criminal conduct;
- to protect the public from further crimes of the defendant; and
- to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Section 3553(a) directs sentencing courts to consider a number of additional factors, including:

- the nature and circumstances of the offense, § 3553(a)(1);
- the history and characteristics of the defendant, § 3553(a)(1);
- the kinds of sentences available, § 3553(a)(3);
- the sentencing guideline range, § 3553(a)(4);
- pertinent Sentencing Commission policy statements, § 3553(a)(5);
- the need to avoid unwarranted sentencing disparities, § 3553(a)(6); and
- the need to provide restitution to any victims of the offense, § 3553(a)(7).

### a.   The Sentence Imposed

A sentence of four months custody is the appropriate sentence in this case.  When considering the just punishment for the offense, adequate deterrence and the promotion of respect for the law, the Court should consider what happened in this case.  A young man who feels passionately about environmental causes, and wolves in particular, was careless in submitting an advocacy message to his representatives in the Senate.  He clicked an email link, typed in a personalized message, and clicked send.  That is the extent of the conduct, and his lack of

1  deliberation.

2  Within just over a week, the FBI was calling Mr. Berg. He honestly and responsibly
3  called the FBI back the same day that they left a message on his cell phone. He sought the advice
4  of an attorney—first by contacting a public defender in Marin County, and that office contacted
5  undersigned counsel. Mr. Berg and undersigned counsel arranged for him to voluntarily meet
6  with the FBI on March 7, 2011, in the conference room of the Federal Public Defender Office.
7  After talking for a short time, the FBI arrested him and took him into custody outside of the
8  Federal Public Defender Office. He has been in custody since then.

9  The FBI searched his residence. They searched his former residence. They searched his
10 storage unit. The contacted residences of friends of Mr. Berg's as well. And that was
11 appropriate: until they knew that Mr. Berg did not in fact pose a danger to the Senator, it was
12 appropriate to be extremely cautious. Under pressure from the government, Mr. Berg voluntarily
13 surrendered his computer to the FBI, who has already returned it to him because it contained no
14 evidence of wrongdoing.

15 But now we have the benefit of hindsight, additional information, and the probation
16 officer's investigation. We know that Mr. Berg was an environmentalist whose passionate desire
17 to protect wolves from the harms of human "management" caused him to use language that he
18 should not have used. He cares about wolves; he is not an environmental terrorist. He is, in his
19 words, "ashamed" that he caused this to happen. *See* Stewart Decl. ¶ 2 & Ex. A. He regrets that
20 he is here. He wants desperately to apologize to the Senators, though he recognizes that he must
21 have no contact with them.

22 A four-month sentence, which is what the government offered to Mr. Berg and he
23 accepted, is the right sentence here. Mr. Berg faces collateral consequences of this conviction as
24 well: his active probation in Marin County is in violation status and a warrant is out for his arrest.
25 Thus, whenever he finishes his time in federal custody, he will <u>not</u> be released. He will be taken,
26 in custody, to Marin County Superior Court to answer for a probation violation.

DEF'S SENTENCING MEMO,
CR-11-0223 MMC                                    6

Mr. Berg came to the federal building of his own free will on Monday, March 7, 2011. He was arrested. He has been in custody since that time and, if the Court sentences him in accordance with the plea agreement, he is to be released on July 7, 2011 to the detainer from Marin County. That sentence is sufficient for the transgression to which Mr. Berg pled guilty. He waived indictment and permitted the government to preserve its resources by agreeing to proceed by felony information. He pled guilty virtually immediately. It is time for Mr. Berg to get the benefit of the bargain that he entered into - he should be sentenced to four months custody.

      **b.**     **Conditions of Supervised Release**

Mr. Berg objects to the following special conditions of supervised release suggested by the probation officer: 2, 3, 6, 7, 9, 10, 11, 12, 13. He has specific objections for each one, but observes at the outset that the many and highly restrictive conditions suggested by the probation officer will probably make him more likely to fail on supervision that to succeed in his efforts at rehabilitation. Moreover, as a general matter, Mr. Berg objects to the probation officer's apparent attempt to enforce conditions that are entirely unrelated to the instant offense and, instead, are related to his prior convictions including one that is over eight years old.

**Conditions two and three** relate to the probation officer's attempt to satisfy a minimum term of confinement contained in the probation's guideline calculation. That is, the probation officer adds eleven months of house arrest to four months of custody to reach a total of fifteen months.[1] This suggestion is dictated by the Sentencing Guidelines, and is out of step with what is needed in *this case* for *this offender*. There are times when the Court, the parties, and the probation office should not blindly follow the Guidelines. This is one of them. Mr. Berg has

---

[1] Because the plea agreement in this case was entered under rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, it is Mr. Berg's position that the Court cannot sentence Mr. Berg as recommended by the probation officer (to conditions 2-3) without rejecting the plea agreement under Rule 11. The probation officer's addition of eleven months of home confinement is clearly inconsistent with the sentence agreed upon by the parties.

DEF'S SENTENCING MEMO,
CR-11-0223 MMC                 7

learned his lesson already. He is being convicted of a federal felony offense. No further punitive sanction is necessary. Furthermore, as a professed lover of nature and the great outdoors, home confinement is likely to exacerbate Mr. Berg's mental health.

**Condition six** does not apply as a matter of law. California Penal Code section 457.1 obligates certain individuals convicted of arson offenses to register pursuant to state law. People convicted of violations of section 451, 455, and other subsections must register. *See* Cal. Penal Code § 457.1. Violators of Penal Code section 452—of which Mr. Berg was convicted—have no obligation to register.[2] *See id.*

**Condition seven** should not be applied as a matter of policy. There are certain offenses and certain offenders that the United States Attorney's Office believes merit an enhanced search condition of this nature. When the government seeks this highly restrictive condition, they make the defendant agree to it by putting it in the plea agreement. The government did not do so here. Mr. Berg did not agree to this condition and it should not be applied. It is not warranted under the circumstances. This is <u>not</u> a case in which Mr. Berg possessed a gun or drugs. Quite the contrary—extensive searches by the FBI of his residences and property yielded nothing.

**Conditions nine through thirteen** all relate to contact with minors and submission to rigorous sex offender treatment programs and polygraphs. This is simply not warranted here. This is not a child pornography case. It is not a sexual assault case. It is not a case about traveling in interstate commerce to engage in illicit sexual activity. This is a threats case. The probation officer is inappropriately dredging up a misdemeanor offense from Mr. Berg's past. That was over eight years ago. He completed his probation successfully. His probation was never revoked for a violation. He has not been accused of, arrested for, or convicted of any offense involving a minor since then.

Highly restrictive conditions imposed on sex offenders makes their lives extremely

---

[2] Undersigned counsel also notes that Mr. Berg is on active probation in Marin County for that offense. The State authorities would see to it that he follow state law; he is in compliance.

difficult. Mr. Berg *is* required to register as a sex offender under Penal Code 290, and he is compliant with that state law.³ He agrees that condition number eight regarding the same should apply. But the additional conditions are not warranted by the facts of *this case*. His recent history does not show any propensity to target or victimize minors and the onerous and extensive restrictions suggested by the probation department are not justified.

Undersigned counsel is concerned that the probation officer's recommendation sends precisely the wrong message: it holds against Mr. Berg today things that happened long ago and expresses no faith in him whatsoever. But Mr. Berg deserves a chance. Mr. Berg has a supportive family, a strong educational and employment background, and a chance to get his life back on track. He respectfully asks that the Court support him in that endeavor and not impose special conditions 2, 3, 6, 7, 9, 10, 11, 12, and 13.

## IV. CONCLUSION

For the foregoing reasons, Mr. Berg asks that the Court sentence him in accordance with the plea agreement to a term of four months of incarceration to be followed by three years of supervised release. That sentence is sufficient but not greater than necessary to fulfill the goals of sentencing.

Dated: June 29, 2011

                                          Respectfully submitted,

                                          BARRY J. PORTMAN
                                          Federal Public Defender

                                          _____/s/_____
                                          LOREN D. STEWART
                                          Assistant Federal Public Defender

---

³ Indeed, Mr. Berg moved from Marin County to Alameda County approximately four days before he was arrested in this case. He had already contacted the police department in Alameda County to update his registration within four days of moving. Mr. Berg scrupulously complies with his obligations in this regard.

DEF'S SENTENCING MEMO,
CR-11-0223 MMC                                                     9